UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MEDINA ESCOBAR, aka Juan Manuel Roggio,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States, in her official capacity, et al.,<br><br>　　　　　　　　　　　Respondents. | Case No.: 3:26-cv-00197-RBM-MSB<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE [Doc. 1]; AND**<br><br>**(2) DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AS MOOT [Doc. 2]** |

　　　Pending before the Court are Petitioner Javier Medina Escobar's ("Petitioner") Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and Ex Parte Application for Temporary Restraining Order ("TRO Motion") (Doc. 2).

　　　For the reasons set forth below, the Petition (Doc. 1) is **DENIED WITHOUT PREJUDICE** and the TRO Motion (Doc. 2) is **DENIED AS MOOT**.

//

//

## I. BACKGROUND

Petitioner, a native and citizen of Mexico, entered the United States without inspection in March 2004. (Doc. 1 ¶ 36; Doc. 7 at 2.)[1] "On August 20, 2004, Petitioner was convicted for bringing in and harboring certain aliens under 8 U.S.C. § 1324 and was sentenced to 12 months and 1 day in prison." (Doc. 7 at 2 (citing Doc. 7-2 at 2).) On March 1, 2005, Petitioner was ordered removed by an immigration judge ("IJ"). (Doc. 7-2 at 2; *see* Doc. 7-3 at 1.) After Petitioner waived appeal, the removal order became final and he was physically removed from the United States to Mexico on March 4, 2005. (Doc. 7-2 at 2; *see* Doc. 7-3 at 2.) Petitioner subsequently re-entered the United States, "[h]is 2005 removal order was reinstated, and on January 28, 2008, he was removed to Mexico a second time." (Doc. 7 at 2 (citing Doc. 7-2 at 2–3).) Petitioner unlawfully re-entered the United States that same year. (*Id.*)

On September 24, 2025, Petitioner was charged in this District under 18 U.S.C. § 1326 as a deported alien found in the United States. (*Id.* (citing *United States v. Juan Manuel Raggio-Escobar*, 3:25-mj-05225-MMP-1, ECF Nos. 1-2 (S.D. Cal. Sept. 24, 2025)).) After Petitioner posted bond on October 7, 2025, U.S. Immigration and Customs Enforcement ("ICE") reinstated Petitioner's removal order and detained him. (*Id.*; *see* Doc. 7-4 at 1.) On the United States' motion, the district court dismissed Petitioner's criminal case without prejudice that same day. (Doc. 7 at 3.)

While in detention, Petitioner claimed a fear of returning to Mexico and was provided a credible fear interview. (*Id.*) An asylum officer determined that Petitioner did not establish a reasonable possibility of persecution or torture in Mexico. (*Id.*; *see* Doc. 7-5 at 1.) On Petitioner's request, an IJ reviewed and subsequently affirmed the negative credible fear determination during a withholding-only proceeding on November 11, 2025. (Doc. 7 at 3; *see* Doc. 7-5 at 1.)

---

[1] The Court cites the paragraph numbers of the Petition and the CM/ECF electronic pagination for other citations unless otherwise noted.

On November 10, 2025, "Petitioner filed a petition for relief with the Ninth Circuit challenging the IJ's withholding-only determination." (Doc. 7 at 3; Doc. 7-7 at 4.) This temporarily stayed Petitioner's removal until further order of the court. (Doc. 7 at 3 (citing Ninth Circuit General Order 6.4); Doc. 7-7 at 4.) The Ninth Circuit also granted a stay of the Parties' briefing pending the resolution of the Government's dispositive motion. (Doc. 7 at 3; Doc. 7-7 at 4.)

Petitioner then sought custody redetermination under 8 U.S.C. § 1226(a). (Doc. 1 ¶ 3.) On December 31, 2025, an IJ held a custody redetermination hearing pursuant to 8 C.F.R. § 1236 and denied bond for lack of subject matter jurisdiction under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) and the "presence of a final order of removal." (Doc. 7-6 at 1.) The IJ also issued an alternative decision denying bond based on a finding that Petitioner "is a danger due to criminal record." (*Id.*; Doc. 1 ¶¶ 3, 46.) "As of January 22, 2026, it is the Government's understanding that Petitioner has *not* filed an appeal with the Board of Immigration Appeals (BIA) concerning Petitioner's adverse bond determination, which is due February 2, 2026." (Doc. 7 at 3 (emphasis in original).)

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.  DISCUSSION

Petitioner claims he is being improperly detained without any statutory authority in violation of the Immigration and Nationality Act, the Fifth Amendment's Due Process

Clause, and the Administrative Procedure Act ("APA"). (Doc. 1 ¶¶ 49–82.) Respondents argue that: (1) Petitioner is properly detained under 8 U.S.C. § 1231, not § 1226, because Petitioner is subject to a final removal order; and (2) Petitioner's detention has not been unconstitutionally prolonged. (Doc. 7 at 4–12.)

### A. Statutory Authority for Continued Detention

Respondents contend that Petitioner has a reinstated final removal order and is therefore subject to mandatory detention under 8 U.S.C. §1231. (Doc. 7 at 2.) Petitioner claims his detention is governed under § 1226(a), not § 1231, because his removal is not "executable." (Doc. 8 at 2; *see* Doc. 1 ¶¶ 30–31, 54.)

Petitioner's argument is inconsistent with Ninth Circuit and Supreme Court precedent. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 830–31 (9th Cir. 2017); *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). "Section 1226(a) . . . applies only while 'a decision on whether the [noncitizen] is to be removed from the United States' is 'pending'. . . ." *Padilla-Ramirez*, 882 F.3d at 831 (quoting 8 U.S.C. § 1226(a)). By contrast, § 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Section 1231's detention authority applies during the "'removal period' . . . which begins on the latest of three dates: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order; or (3) if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." *Padilla-Ramirez*, 882 F.3d at 830 (quoting 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)) (cleaned up).

As relevant here, in *Guzman Chavez*, the Supreme Court concluded that § 1231 "applies to [noncitizens] who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." 594 U.S. at 526; *see Delkash v. Noem*, Case No. 5:25-cv-01675-

HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025) ("Detention, release, and removal of individuals ordered removed—including those, like [Petitioner], with pending 'withholding only' proceedings—is governed by 8 U.S.C. § 1231(a).") (citing *Arteaga-Martinez*, 596 U.S. at 578).

In this case, Petitioner was "ordered removed" within the meaning of § 1231 in March 2005. His removal order became final on that same day and was then reinstated on two separate occasions—first in January 2008 and most recently in October 2025. *See Padilla-Ramirez*, 882 F.3d at 831 ("[A] reinstated removal order is administratively final.") (citing 8 U.S.C. § 1231(a)(5)). Petitioner contends that his removal order is not "executable" and that § 1231's detention authority does not apply because the removal period has not commenced due to a judicial stay of his removal. (Doc. 8 at 2, 4.) However, the removal period trigger that Petitioners appears to reference—a court order lifting a stay—is applicable only "[i]f the *removal order* is judicially reviewed." *See* 8 U.S.C. § 1231(a)(1)(B)(2) (emphasis added). Petitioner's pending appeal with the Ninth Circuit concerns his request for withholding of removal, not his underlying removal order. (Doc. 7 at 3 (citing Doc. 7-7 at 1–5).) Nor could he request such review. As Petitioner "reentered the United States illegally after having been removed . . . under an order of removal," and his prior order of removal was reinstated, his removal order "is not subject to being reopened or reviewed." § 1231(a)(5); *cf. Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) ("[W]hen a court of appeals issues a stay of removal pending its decision on a noncitizen's petition for *review of his removal order*, the removal period begins only after the court denies the petition and withdraws the stay of removal."). Petitioner is subject to a final order of removal, and the Government is not restricted from removing him from the United States to the designated country of removal. § 1231(b)(3). Thus, Petitioner is not "pending a decision on whether . . . [he] is to be removed from the United States" under § 1226(a).

Although Petitioner is seeking relief through withholding-only proceedings, his "reinstated removal order remains administratively final, [and] he is detained pursuant to

section 1231(a)." *Padilla-Ramirez*, 882 F.3d at 832; *see Guzman Chavez*, 594 U.S. at 526 ("[Section] 1231, not § 1226, governs the detention of [noncitizens] subject to reinstated orders of removal, meaning those [individuals] are not entitled to a bond hearing while they pursue withholding of removal."). Accordingly, Petitioner's First Cause of Action is **DENIED**.

### B. Due Process and the APA

Respondents argue "the Petition should be denied for four reasons: (1) Petitioner's detention is within the six-month presumptively reasonable period of detention; (2) he fails to provide good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future; (3) he has caused the delay in his removal by seeking withholding-only relief and obtaining a stay from the Court of Appeals for the Ninth Circuit; and (4) he has failed to exhaust his administrative remedies." (Doc. 7 at 7.)

As a preliminary matter, Petitioner does not challenge his detention as unconstitutionally prolonged under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 ¶¶ 62–73; *see generally* Doc. 8.) As Petitioner advances no argument that his post-removal detention under 8 U.S.C. § 1231 is unconstitutional, the Court need not reach this issue.

Instead, Petitioner maintains that his "[c]ontinued detention without access to a custody redetermination hearing under" § 1226(a) and "pursuant to [the IJ's] procedurally defective custody determination violates the Due Process Clause of the Fifth Amendment." (Doc. 1 ¶¶ 30, 72.) Petitioner contends: (1) the IJ's application of the "categorical agency interpretation" set forth in *Matter of Yajure Hurtado* "exceeds statutory authority and conflicts with controlling Ninth Circuit law;" and (2) the IJ's "alternative 'danger' determination did not comply with the procedural requirements of 8 U.S.C. § 1226(a) or binding Ninth Circuit precedent." (*Id.* ¶¶ 67–68 (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)).)[2] But as previously determined, Petitioner is not entitled to a

---

[2] This Court, along with other courts in this District, has waived the prudential exhaustion for habeas petitioners detained during the pendency of ongoing removal proceedings where

bond determination hearing under § 1226(a) because he is detained pursuant to § 1231(a). Indeed, in denying Petitioner's custody redetermination request, the IJ concluded she lacked "jurisdiction due to *Matter of Yajure Hurtado* and the presence of a final order of removal." (Doc. 7-6 at 1 (emphasis added).)

As Petitioner sets forth no other grounds in support of his due process claim, and his APA claim is premised on the same claim that "8 U.S.C. § 1226(a) governs Petitioner's custody" (*see* Doc. 1 ¶ 81), the Second and Third Causes of Action are **DENIED**.

## IV.   CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **DENIED WITHOUT PREJUDICE** and the TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATE:  February 19, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

"exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2)." *Esquivel-Ipina v. LaRose*,— F. Supp. 3d —, 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025).